UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLAUDE LIGHTFOOT                                    CIVIL ACTION

VERSUS                                              NUMBER: 10-2794

MXENERGY, INC.                                      SECTION: "B"(1)

## OPINION

Appellant Claude Lightfoot, in his capacity as Trustee for the MBS Unsecured Creditors' Trust, appeals the Bankruptcy Court's Memorandum Opinion in Adversary Proceeding No. 09-01158. (Rec. Doc. No. 4). Appellee MXEnergy Electric Inc., filed an Original Brief on Behalf of the Appellee/Cross-Appellant. (Rec. Doc. No. 6). Appellant then filed a Reply Brief at (Rec. Doc. No. 7). Finally, Appellee filed a Reply Brief on Behalf of the Cross-Appellant. (Rec. Doc. No. 8).

The ruling of the Bankruptcy Court is hereby **AFFIRMED** for the following reasons.

### Facts of Case:

On December 12, 2005, MBS Management Services, Inc ("MBS") and Vantage Power Services, LP ("Vantage") entered into a Commercial Agreement ("the Contract") that required Vantage to "supply the full requirements" of electricity to MBS, with MBS required to "receive and take its full electric requirements from Vantage." (Rec. Doc. No. 4-2 p. 9) (Rec. Doc. No. 4-6 p. 1).

The contract provided that the Energy Charges would be calculated by multiplying the "total monthly-consumed kilowatt hours" by the "Energy Price listed in the Price Exhibit." (Rec. Doc. No. 4-2 p. 9) (Rec. Doc. No. 4-6 p. 1). The Price Exhibit set a term of twenty-four (24) months for the contract and stated a fixed price of $0.119 per kWh. (Rec. Doc. No. 4-2 p. 10) (Rec. Doc. No. 4-6 pgs. 1-2).

Although the contract was signed by MBS, MXenergy ("MX") actually delivered electricity to forty-five (45) separate apartment complexes under the contract. (Rec. Doc. No. 4-6 p. 2). Each apartment complex was owned by a separate company for whom MBS provided management services. (Rec. Doc. No. 4-6 p. 2). Although they were sister companies to MBS, none of them signed the contract. (Rec. Doc. No. 4-6 p. 2)

MX's accounting records divided the charges incurred into forty-five (45) sub-accounts based on the delivery location for the electricity provided. (Rec. Doc. No. 4-6 p. 2). Each month, invoices for electrical services were mailed to MBS' main office for each sub-account, identifying the property to which service was delivered. (Rec. Doc. No. 4-6 p. 2).

On April 16, 2007, Vantage and MX entered into an Asset Purchase Agreement whereby Vantage transferred all of its electrical service agreements, including the contract at issue, to MX. (Rec. Doc. No. 4-6 p. 2).

On November 5, 2007, MBS filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. (Rec. Doc. No. 4-6 p. 2). Following confirmation of the Chapter 11 Plan, MBS transferred all rights to avoid preferential or fraudulent conveyances to a litigation trust for prosecution. (Rec. Doc. No. 4-6 p. 2). Claude Lightfoot ("Trustee") was named Trustee of the MBS Unsecured Creditors' Trust. (Rec. Doc. No. 4-6 p. 2).

Trustee brought suit to avoid and recover payments of $156,345.93 made by MBS to MX. (Rec. Doc. No. 4-6 p. 2). Trustee alleges that the payments were preferential under 11 U.S.C. § 547. (Rec. Doc. No. 4-6 p. 2). At trial, the parties stipulated to all of the elements of a preference action; therefore, the resolution of this matter turns on MX's defenses to the complaint. (Rec. Doc. No. 4-6 p. 3).

In her Memorandum Opinion, dated June 29, 2010, the Honorable Elizabeth W. Magner, U.S. Bankruptcy Judge for the Eastern District of Louisiana, ruled that the payments made by MBS to MX could not be avoided because MX was a forward contract merchant, the contract was a forward contract, and the payments received by MX were settlement payments under the contract. (Rec. Doc. No. 4-6 p. 10). Based on this conclusion, the Bankruptcy Court determined that it "need not discuss MX's remaining defenses of ordinary course and new value." (Rec. Doc. No. 4-6 p. 10). Trustee filed a notice of

appeal on July 13, 2010 (Rec. Doc. No. 4-10), and MX filed a cross notice of appeal on July 19, 2010 (Rec. Doc. No. 4-10).

## A. Standard of Review

The Fifth Circuit has consistently held that the standard of review applicable to bankruptcy appeals in a district court is the same as the standard applied by a Court of Appeals to a district court proceeding. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir.1989). Factual findings of the Bankruptcy Court are reviewed for clear error, Fed. R. Bankr.P. 8013, and the appellant has the burden of demonstrating that the bankruptcy court's findings are clearly erroneous. *In re Drehsen*, 190 B.R. 441, 442 (M.D.Fla.1995). Conclusions of law, and mixed conclusions of law and fact are reviewed de novo. *In re Nation Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

## B. Forward Contracts

Trustee contends that the Bankruptcy Court erred in finding the contract to be a forward contract as MBS is not a merchant; no quantity of electricity is specified in the contract; and electricity was not delivered on a specified future date. Under 11 U.S.C. §101(25)(A), a forward contract is defined as:

> [A] contract (other than a commodity contract) for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title . . . which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date

>    more than two days after the date the contract is entered into....

**(1) Forward Contract Merchant**

Trustee contends that MBS is not a forward contract merchant under 11 U.S.C. § 101(26), which defines a "forward contract merchant" as a

>    Federal reserve bank, or an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity (as defined in section 761) or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade.

Whether MBS is a forward contract merchant seems non-dispositive of issues for this appeal. 11 U.S.C. § 546(e) prohibits avoidance of settlement payments made *by or to* a forward contract merchant on a forward contract.[1] Looking at the plain language of the statute, the statute's use of the disjunctive "or" means that either the payor or payee, but not both, need to qualify as a forward contract merchant.... 546(e) requires only one of the contracting parties, not both, to qualify as a forward contract merchant.

---

[1] *See* 11 U.S.C. § 546(e)("Notwithstanding § 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a . . . settlement payment, as defined in § 101 or 741 of this title, made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, that is made before the commencement of the case, except under §548(a)(1)(A) of this title.").

The Bankruptcy Court correctly concluded that MX is a forward contract merchant based on evidence that "MX is in the business of buying and selling electrical power," and "[i]t does not produce any of the power it markets." Accordingly, MBS does not need to qualify as a forward contract merchant in order for the contract to be a forward contract as long as MX is correctly deemed a forward contract merchant.

**(2) *Quantity***

Trustee argues that the Contract is not a forward contract because it is not for a set quantity of electricity but instead requires MX to "supply the full requirements" of electricity to MBS. (See Rec. Doc. No. 4). Nothing in the language of 11 U.S.C. §§ 101(25) and 546(e) requires a forward contract to provide for the purchase of a quantity of a commodity.

Trustee argues that several courts have found that forward contracts must be for a specific quantity of goods, including *In re National Gas Distributors, LLC*, and *In re Olympic Natural Gas Co.*[2] None of these cases expressly held that quantity was an essential characteristic of a forward contract. Moreover, the court's findings in *In re Olympic* are dicta for purposes of this appeal, because that case involved the purchase and sale of certain,

---

[2] *In re National Gas Distributors, LLC.*, 556 F.3d 247 (4th Cir. 2009), *In re National Gas Distributors, LLC*, 412 B.R. 758 (Bankr. E.D.N.C. 2009); *Williams v. Morgan Stanley Capital Group, Inc. (In re Olympic Natural Gas Co.)*, 258 B.R. 161 (Bankr. S.D. Tex. 2001), *affirmed*, 294 F.3d 737 (5th Cir. 2002).

specified quantities of natural gas. *In re Olympic*, 294 F.3d at 739. In contrast, the contract here involves the purchase and sale of an intangible energy commodity which has neither mass nor volume. The court's findings in *In re National Gas Distributors* are also dicta, because that court did not address the distinction between forward and futures contracts.

The Bankruptcy Court provided a detailed explanation of the distinction between forward and futures contracts:

> [F]utures contracts are uniform to facilitate trading between members of an exchange. They provide for the delivery of a commodity at a set price, quantity, delivery date, and place of delivery. In a commodities exchange, all futures contracts are submitted to a clearinghouse which assumes responsibility for the trade....
>
> In contrast, forward contracts are negotiated between industry participants and forward contract merchants. The industry participants are either producers or users of the commodity who sell or purchase the commodity in advance to hedge against price fluctuations....
>
> There is no clearinghouse involvement with forward contracts. As a result, the forward contract merchant must deliver on the contracts to which it commits by supplying the commodity or taking delivery. While forward contracts provide an imperfect hedge against fluctuations in supply, the risks associated with an unexpected increase of demand for a commodity and the cost increases to purchase sufficient supply to fulfil the forward contract can be managed through security deposits, letters of credit, other financial instruments, or simply the creditworthiness of the forward contract merchant. As a result, forward contracts for electricity do not typically limit the quantity sold or

>            purchased. Instead, they are generally for the
>            entire needs or demands of the purchaser.

(Rec. Doc. No. 4-6 pgs. 6-8).

In sum, unlike futures contracts, forward contracts generally do not specify quantities of a commodity.  This is because forward contracts are not regulated or subject to the rules of a contract commodity exchange; therefore, forward contracts may vary in their terms.  As such, the contract at issue did not have to specify a quantity of electricity in order to qualify as a forward contract.

### (3) *Electricity Delivered on a Specified Future Date*

Trustee also contends that the contract does not qualify as a forward contract because "there was no specified time for delivery of electricity." (Rec. Doc. No. 4 p. 16).  Trustee cites *In re Olympic* and *SEC v. G. Weeks Secur., Inc.*, 678 F.2d 649 (6th Cir. 1982) in support of its position.  For reasons addressed *supra*, these cases are dicta for purposes of this appeal.

The text of 11 U.S.C. §101(25) only requires that the contract have "a maturity date more than two days after the date the contract is entered into."  The contract was entered into on December 12, 2005, and the date of first delivery was December 19, 2005.  Neither party disputes that the contract's initial delivery date was at least two (2) days following execution.  (Rec. Doc. No. 4-6 p. 4).

For the foregoing reasons, the Bankruptcy Court did not err in finding that MX is a forward merchant contract, that the contract is a forward contract, and that the payments received by MX were settlement payments under the Contract.

## C. Testimony of Jeffrey A. Mayer

In its second assignment of error, Trustee argues that the Bankruptcy Court erred in approving Jeffrey A. Mayer as an expert and accepting his testimony in connection with this case. (Rec. Doc. No. 4 p. 17).  "A district court's decision to admit or exclude the testimony of a proposed expert is reviewed under the abuse of discretion standard." *Fruge versus Augusta Barge Co.*, 2009 U.S. Dist. LEXIS 29280 at *2 (W.D. La. Mar. 19, 2009) (citing *Wright v. Ford Motor Co.*, 508 F.3d 263, 275 (5th Cir. 2007)). Applying this standard, the Fifth Circuit has recognized that district courts are given "wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge . . . will not be disturbed on appeal unless manifestly erroneous." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

Trustee argues that Mayer "had not previously qualified as an expert" and "had not prepared any detailed expert's report." (Rec. Doc. No. 4 p. 18).  However, Mayer was designated by MX as an expert in pre-trial disclosures, and his expert report was offered

by Affidavit.  (Rec. Doc. No. 4-3 p. 2) (Rec Doc. No. 4-3 p. 5). This Affidavit was accepted in the instant case in connection with MX's Motion for Summary Judgment.  (Rec. Doc. No. 6 p. 18).

Trustee further contends that Mayer's testimony was not objective because "he was the President of MXenergy testifying for his company, of which he was the founder and a shareholder." (Rec. Doc. No. 4 p. 18).  However, that fact alone does not disqualify him from testifying as an expert witness.  As stated by the Fifth Circuit, "[n]othing in the Federal Rules of Evidence prohibits a party from serving as an expert witness.  The fact that the witness is a party is properly considered when the court assesses the witness' credibility." 980 F.2d 1014, 1019 (5th Cir. 1993); *See also Dunn v. Sears* ("That a witness is an employee of a party does not preclude his qualification as an expert.")

Judge Magner found that Mayer provided many missing details regarding the futures and forward contract markets. His testimony was found, based on record evidence, "credible on the practices and procedures attendant with both [futures and forward contract] markets."  (Rec. Doc. No. 4-6 p. 8).  MBS had an opportunity to conduct *voir dire* and cross-examine Mayer.  (See Rec. Doc. No. 6 p. 19).  Furthermore, MBS offered no evidence to refute the opinions

presented by Mayer by bringing in any competing experts.[3] (Rec. Doc. No. 4-6 p. 8).

Trustee also argues that Mayer gave opinions on questions of law rather than opinions on questions of fact. (Rec. Doc. No. 4 p. 19). Specifically, Trustee argues that the Bankruptcy court "based its findings that [MX] was a forward contract merchant and that the [Contract] was a forward contract upon the testimony of Mayer [sic]." (Rec. Doc. No. 4 p. 19) (citations omitted). Trustee contends that questions of law "are reserved for the Court alone." (Rec. Doc. No. 4 p. 19). However, as correctly noted by MX,

> [C]ontary to Appellant's assertion, the question for this Court is not whether Mr. Mayer offered an opinion on an question of law. Instead, the relevant inquiry for this court is twofold: (1) did Mr. Mayer offer the bases for his conclusion, and (2) is his conclusion buttressed by overwhelming evidence. (citation omitted).

Mayer testified that "MX is in the business of buying and selling electrical power," and "[i]t does not produce any of the power it markets." (Rec. Doc. No. 4-6 p. 4). This testimony is factual in nature. Based on this testimony, the Bankruptcy Court correctly concluded that MX was a forward merchant contract.

Mayer also testified that quantity is not an essential term of a forward contract in electricity. (See Rec. Doc. No. 4-6).

---

[3] *Fierro v. Gomez*, 865 F.Supp. 1387, 1395 n. 7 (N.D. Cal. 1994), *aff'd,* 77 F.3d 301 (9th Cir. 1996),*vacated and remanded on other grounds,* 519 U.S. 918, 117 S.Ct. 285, 136 L.Ed.2d 204 (1996), *modified on other grounds on remand,* 147 F.3d 1158 (9th Cir. 1998) (concluding that, in the context of a nonjury trial, under *Daubert* it is better to "allow 'vigorous cross-examination, presentation of contrary evidence' and careful weighing of the burden of proof to test 'shaky but admissible evidence' " than to exclude expert evidence altogether (quoting *Daubert)).*

Although the Bankruptcy Court ultimately agreed with Mayer, the court did not blindly accept Mayer's testimony. Judge Magner examined and distinguished the cases cited by Trustee in support of his theory about quantity. In addition, Judge Magner analyzed the fundamental differences between the futures market and the forward contracts market as discussed by Mayer. MBS offered no evidence to refute the opinions presented by Mayer. (Rec. Doc. No. 4-6 p. 8). Based on applicable law, other record evidence and the uncontested testimony of Mayer, Judge Magner correctly concluded that "[f]or a court to require a forward contract to contain a condition that is not typically present would defeat the purpose of § 546(e) by narrowing its application. Nothing in the statute warrants such a limitation."

Based on the foregoing reasons, Judge Magner did not abuse her discretion in approving Mayer as an expert and accepting his testimony in connection with this case.

**Conclusion**:

In sum, the Bankruptcy Court did not err in finding that MX is a forward merchant contract, that the contract at issue is a forward contract, and that the payments received by MX were settlement payments under the contract. Furthermore, the Bankruptcy Court did not err in approving Jeffrey A. Mayer as an expert and accepting his testimony in connection with this case. Because the payments to MX are protected from avoidance by the Trustee, this

Court need not discuss MX's remaining defenses of ordinary course and new value. Accordingly, the ruling of the Bankruptcy Court is **AFFIRMED** and the instant appeal is **DISMISSED** at appellant's costs.

New Orleans, Louisiana, this 17th day of May, 2011.

_____
UNITED STATES DISTRICT JUDGE